OPINION OF THE COURT
Duane A. Hart, J.
This decision addresses motions made in two separate but related actions.*
The plaintiffs in action No. 1 are nonunion employees of Green Bus Lines, Inc., Triboro Coach Cdrp., Jamaica Buses, Inc., and Command Bus Company, Inc. (the bus companies). They commenced this action against defendants City of New York and the Metropolitan Transportation Authority (the MTA) by the filing of a summons and complaint on June 10, 2004. On August 17, 2004, the Andre plaintiffs filed an amended complaint asserting additional claims against defendant AIG Claim Services, Inc. (AIGCS).
The plaintiffs in action No. 2 are the bus companies. They commenced the subject action against the City and the MTA by the filing of a summons and complaint on August 18, 2004. The bus companies are privately owned and operated entities which have provided bus transportation to passengers on local and express routes in Queens, Manhattan and Brooklyn for several decades. They currently operate these routes pursuant to a grant of operating authority awarded to them by the City in August 1975. The City has recently proposed transferring the operations of the bus companies to the MTA.
At the heart of these matters is the issue of whether the City may transfer the operation and maintenance of the subject bus routes to the MTA without requiring the MTA or other successor transportation provider to comply with and assume responsibility for certain union and nonunion employee protective arrangements guaranteed and required by the 1975 operating agreement and subsequent certifications. However, the scope of the successor arrangements are not at issue herein and shall be determined by the United States Department of Labor (the DOL) in a pending arbitration. Thus, the plaintiffs in both actions seek declaratory and injunctive relief, inter alia, enjoining the City from transferring the operations of the bus companies in advance of the determination by the DOL.
*363 Background
On August 8, 1975, the City entered into an operating agreement with certain companies and local transit unions in connection with a grant application seeking federal assistance for the City from the Federal Transit Administration (FTA). “Under § 13(c) of the Urban Mass Transportation Act of 1964 ... a state or local government must make arrangements to preserve transit workers’ existing collective-bargaining rights before that government may receive federal financial assistance for the acquisition of a privately owned transit company.” (Jackson Transit Authority v Transit Union, 457 US 15, 16 [1982].) In fact, “Congress intended that § 13(c) would be an important tool to protect the collective-bargaining rights of transit workers, by ensuring that state law preserved their rights before federal aid could be used to convert private companies into public entities.” (Jackson Transit Authority v Transit Union, 457 US 15, 27-28 [1982].) Additionally, when the act was under consideration, Congress was aware of the increasingly precarious financial condition of a number of private transportation companies across the country, and it was concerned that communities might be left without adequate mass transportation. (See S Rep No. 82, 88th Cong, 1st Sess, at 4-5, 19-20.) Thus, the act was also partly designed to provide federal aid for local governments in acquiring failing private transit companies so that affected communities could continue to receive the benefits of mass transportation despite the collapse of private transportation operations. (See, Urban Mass Transportation Act of 1964 § 2 [b]; § 3 [49 USC § 5301 (f); § 5309, as amended].)
As required by section 13 (c) of the Urban Mass Transportation Act of 1964, the 1975 agreement sets forth the rights and obligations of the parties with respect to the initial grant application, in part, as follows:
“Whereas, the City of New York, New York (‘City’), has filed an application under the Urban Mass Transportation Act of 1964, as amended (‘Act’), for an operating assistance grant to assist in the effort to maintain current levels of bus mass transportation service provided by the privately-owned franchise omnibus operators of the City of New York, as more fully described in the project application (‘Project’); and WHEREAS, the City will pay over the said federal operating assistance grant to the ten privately-owned urban mass transit carriers signa *364 tory hereto ( . . . wherever the word ‘Recipient’ appears in this agreement it is intended to mean the ‘Private Operator’ or Private Operators) and WHEREAS, sections 3 (c) (4), section 5 (n) (1) and 13 (c) of the Act require, as a condition of assistance thereunder, that fair and equitable arrangement be made as determined by the Secretary of Labor ‘to protect the interests of employees affected by such assistance’; and WHEREAS, the parties have agreed upon the following arrangements as fair and equitable: Now, THEREFORE, it is agreed that in the event this project is approved for assistance under the Act, the following terms and conditions shall apply:
“(1) The project shall be carried out in such manner and upon such terms and conditions as will not in any way adversely affect employees covered by this agreement.
“(2) All rights, privileges, and benefits (including pension rights and benefits) of employees covered by this agreement (including employees having already retired) under existing collective bargaining agreements or otherwise, or under any renewal thereof, shall be preserved and continued; provided, however, that such rights, privileges and benefits not previously vested may be modified by collective bargaining and agreement of the operator of the transit system and the Union to substitute rights, privileges and benefits of equal or greater economic value . . .
“(4) Any employee covered by this agreement who is laid off or otherwise deprived of employment or placed in a worse position with respect to compensation, hours, working conditions, fringe benefits, or rights and privileges pertaining thereto at any time during his employment as a result of the project, including any program of efficiencies or economies directly or indirectly related thereto, shall be entitled to receive any applicable rights, privileges and benefits as specified in the employee protective arrangement . . .
“(5) The recipient shall be financially responsible for the application of these conditions . . .
“(10) Nothing in this agreement shall be construed as an undertaking by the Union or the employees *365 covered by this agreement to forego any rights or benefits under any other agreement or under any provision of law.
“(11) The term ‘project,’ as used in this agreement, shall not be limited to the particular facility assisted by federal funds, but shall include any charges, whether organizational, operational, technological, or otherwise, which are traceable to the assistance provided, whether they are the subject of the grant contract, reasonably related thereto, or facilitated thereby. The phrase ‘as a result of the Project’ shall, when used in this agreement, include events occurring in anticipation of, during and subsequent to the project.
“(12) This agreement shall be binding upon the successors and assigns of the parties hereto, and no provisions, terms, or obligations herein contained shall be affected, modified, altered, or changed in any respect whatsoever by reason of the arrangements made by or for the recipient to manage and operate the system. Any person, enterprise, body or agency, whether publicly or privately owned.”
By letter dated January 20, 2002, a request by the City for additional grant assistance was approved on the condition that the nonunion employees of the bus companies “be afforded substantially the same levels of protection as are afforded to the employees represented by the union under the August 8, 1975 agreement and this certification.” The certification of January 29, 2002 reads, in part, as follows:
“In connection with a previous grant application, the New York City Department of Transportation, various private bus operators/recipients, the Transport Workers Union (TWU) and Amalgamated Transit Union Locals 726, 1056, 1179, and 1181-1061 executed an agreement dated August 8, 1975. This agreement provides to employees represented by the unions protections satisfying the requirements of 49 U.S.C., section 5333 (b).
“The parties have agreed to apply the terms and conditions of the agreement dated August 8, 1975 to the instant project.
“Accordingly, the Department of Labor makes the certification called for under the statute with respect to the instant project as condition that:
*366 “1. This letter and the terms and conditions of the agreement dated August 8, 1975, shall be made applicable to the instant project and made part of the contract of assistance, by reference;
“2. The term ‘project’ as used in the agreement of August 8, 1975, shall be deemed to cover and refer to the instant project.
“3. Disputes over the interpretation, application and enforcement of the terms and conditions of the protective arrangements certified by the Department of Labor, which include this letter of certification, shall be resolved in accordance with the provisions in the aforementioned agreement and/or arrangement for the resolution of such disputes; and
“4. Employees of urban mass transportation carriers in the service area of the project, other than those represented by the local unions which are a party to, or are otherwise referenced in the protective arrangement, shall be afforded substantially the same levels of protection as are afforded to the employees represented by the union under the August 8, 1975 agreement and this certification. Such protections include procedural rights and remedies as well as protections for individual employees affected by the project.
“Should a dispute remain, after exhausting any available remedies under the protective arrangements, and absent mutual agreement by the parties to utilize any other final and binding procedure for resolution of the dispute, the Secretary of Labor may designate [a] neutral third-party or appoint a staff member to serve as arbitrator and render a final and binding determination.”
On or about January 1, 2002, the City transferred the work of the bus companies’ claims management department for all liability claims arising after January 1, 2002 to AIGCS. On December 20, 2002, the City announced that all existing liability claims processed by the bus companies’ claims department would also be transferred to AIGCS effective January 13, 2003. The bus companies challenged the transfer of existing claims to AIGCS and the court (Kitzes, J.) restrained the transfer of such claims to AIGCS and sought an explanation by the City of its authority for the transfer. Subsequently, the City rescinded its action and notice of transfer.
*367 Thereafter, on or about April 19, 2004, the City announced that the MTA would take over the operation and management of the transit system currently operated by the companies on July 1, 2004. The City extended this date to December 4, 2004, and extended it again pending the resolution of certain issues. As part of the takeover, the MTA intends to assume control over the buses and facilities currently operated by the companies. Certain terms of the contemplated takeover agreement are contained in a term sheet agreement between the City and the MTA, dated April 19, 2004, which states: “The MTA does not assume any preexisting liabilities, such as worker[s’] compensation, tort claims, environmental remediation and pension obligations. Any severance or other obligations created by virtue of the assumption of service by the private operators will not be borne by the MTA.”
The Parties’ Contentions and Findings of the Court
The plaintiffs commenced these actions alleging that the defendants’ actions and terms of the proposed takeover agreement between the City and MTA violate the City’s obligations under paragraph 12 of the 1975 operating agreement and subsequent certifications requiring all subsequent transit system operators to be bound by the terms of the 1975 agreement and accept responsibility for full performance of the conditions therein for the benefit and protection of all the employees of the bus companies.
The plaintiffs also allege that the loss of jobs and benefits in favor of AIG Claims Services occurred in violation of certain protective arrangements required by the FTA and the 1975 operating agreement. With respect to the takeover of the subject bus services, the plaintiffs seek compliance with and enforcement of the conditions of paragraph 12 of the 1975 agreement and the operating assistance agreements (OAAs), as well as implementation and enforcement of applicable procurement laws, rules and regulations. With regard to the taking of the claims management work, the plaintiffs seek to void the City’s alleged unlawful contract with AIGCS for claims management work and the return of the claims management work to the plaintiffs as well as the implementation and enforcement of applicable procurement laws, rules and regulations.
Among other things, the plaintiffs further allege that the actions of the City and the MTA violate New York City Charter § 310, General Municipal Law § 102 and FTA third-party *368 contracting requirements insofar as the defendants did not follow the procurement procedures required therein.
Action No. 1
The Andre plaintiffs’ first cause of action seeks specific performance of the subject employee protective arrangements.
The second cause of action alleges improper termination of the OAAs entered into between the City and the bus companies and seeks specific performance thereof on the ground that the OAAs require that they may not be terminated by either the City or the bus companies without mutual consent except in two specific circumstances which do not apply here: (a) termination by the City as a result of a default or (b) termination by the City as a result of a change in control of one of the bus companies.
The third cause of action seeks an injunction against the contemplated takeover pending compliance with the 1975 agreement and the subsequent OAAs. It is claimed that the MTA’s refusal to comply with and assume the obligations specified in paragraph 12 of the 1975 agreement have caused and are continuing to cause the City to break the 1975 agreement with respect to the procedural and substantive rights afforded to the plaintiffs as designated beneficiaries of that agreement. The Andre plaintiffs also claim that the refusal of the MTA to comply with and assume the obligations specified in paragraph 12 of the 1975 agreement has caused, and is continuing to cause, the City to breach the terms of the OAAs, of which they are intended third-party beneficiaries, particularly with respect to their employment and termination rights.
The fourth cause of action alleges “Taxpayer Action No. 1: Failure to Follow Lawful Procurement Procedures Regarding the Takeover of Bus Services.” With respect to the fourth cause of action, the Andre plaintiffs allege that no lawful procurement process or any competitive bidding for the subject bus service has been undertaken by the City of New York, thereby constituting, inter alia, a violation of New York City Charter §§ 310 and 316 and General Municipal Law §§ 51 and 103. They allege further that, by failing to implement a lawful procurement process, the City has caused waste and injury to property and funds of a public corporation. According to the Andre plaintiffs, the proposed takeover by the MTA would constitute an award of a contract of monetary value to the MTA without an analysis of the prevailing market price, or any proof by the City that this *369 course of action would provide bus services at a cost which is lower than the prevailing market price. They contend that the injury claimed by the taxpaying plaintiffs is within the zone of interest to be protected by New York City Charter §§ 310 and 316 and General Municipal Law §§ 51 and 103 inasmuch as those provisions provide protection against the City awarding contracts without first submitting to a competitive procurement process or, at a minimum, a cost analysis.
The fifth cause of action alleges “permanent injunctive and declarative relief: unlawful procurement and misuse of public funds regarding AIGCS contract award.” With regard to the fifth cause of action, the Andre plaintiffs allege that the City has transferred claims management responsibilities from the bus companies to AIGCS without the benefit of any solicitation or open public competition and, upon information and belief, in violation of the terms of the service agreement between the City and the bus lines. They also allege that selecting AIGCS to process all new liability claims beginning January 1, 2002 without implementing any competitive procedures for the work violated the New York City Charter and the City’s own procurement policy based rules which mandate the public bidding of service contracts of the size and scope involved.
The sixth cause of action alleges “Taxpayer Action #2: Permanent Injunctive and Declarative Relief Regarding AIGCS Unlawful Contract Awards” and seeks, inter alia, an order enjoining the City from awarding all new and existing claims to AIGCS for handling.
The seventh cause of action seeks “permanent injunctive and declarative relief against a public nuisance” by means of directing the City to take all such actions as are within its ability to continue to maintain the uninterrupted operation of the bus lines.
The City moves for dismissal of the amended complaint against it in action No. 1 pursuant to CPLR 3211 (a) (2), (3), (5), (7) and (10). CPLR 3211 (a) provides:
“A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: . . .
“2. the court has not jurisdiction of the subject matter of the cause of action; or
“3. the party asserting the cause of action has not legal capacity to sue; or . . .
“5. the cause of action may not be maintained because of arbitration and award, collateral estoppel, discharge in bankruptcy, infancy *370 or other disability of the moving party, payment, release, res judicata, statute of limitations, or statute of frauds; or . . .
“7. the pleading fails to state a cause of action; or . . .
“10. the court should not proceed in the absence of a person who should be a party.”
The City’s stated grounds for dismissal have not been established herein.
Contrary to the City’s contention, the matter before the United States Department of Labor does not strip the court of jurisdiction over the subject matter of this action. The present action seeks to ensure that the rights of the bus companies’ employees are not prejudiced by maintaining the bus companies’ operations pending the DOL’s determination of the extent of the federal labor protections that should be afforded to them in connection with the contemplated takeover. Nor does the unresolved DOL arbitration necessitate that this action be stayed since the determination rendered herein will not duplicate or conflict with that of the DOL. Contrary to the City’s further contention, the Andre plaintiffs have standing to sue as intended third-party beneficiaries of the 1975 agreement and subsequent certifications, or OAAs. (See, Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652 [1976]; Crown Wisteria v F.G.F Enters. Corp., 168 AD2d 238 [1990]; cf., Greenwood v Daily News, L.P., 8 Misc 3d 1002[A], 2005 NY Slip Op 50885[U] [2005].) The taxpayer plaintiffs also have standing to seek declaratory and injunctive relief inasmuch as the City’s alleged actions with respect to the transfer of claims management to AIGCS violated state and municipal law bidding and procurement procedures (see General Municipal Law § 103). This provision was enacted to protect municipalities and their taxpayers (Matter of AEP Resources Serv. Co. v Long Is. Power Auth., 179 Misc 2d 639 [1999]). Similarly, the plaintiffs have standing with respect to their taxpayers’ claim regarding the alleged unlawful procurement and contract award to AIGCS of the bus companies’ claims management work since the General Municipal Law mandates that bids on public contracts involving expenditures of more than $20,000 be awarded to the lowest responsible bidder. (General Municipal Law § 103.)
Finally, viewing the amended complaint in a light most favorable to the plaintiffs and accepting the factual allegations as true (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Carter v County of Nassau, 8 AD3d 603 [2004]), the court finds that it is *371 sufficient to withstand the City’s motion and the MTA’s cross motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.
Notwithstanding the MTA’s opposition to being named as a party defendant herein on the ground that it is not a signatory to the 1975 agreement, the court finds that naming the MTA as a party herein was wholly appropriate under the circumstances presented. CPLR 1001 (a) requires that “[a] party whose interest may be adversely affected by a potential judgment” is a necessary party and shall be made a party in the action (Matter of Cybul v Village of Scarsdale, 17 AD3d 462, 463 [2005]). In fact, the failure or inability to join a necessary party is grounds for dismissal of the action. (See, CPLR 1003; Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals, 18 AD3d 558 [2005]; Horwitz v Sax, 16 AD3d 161 [2005]; Matter of East Bayside Homeowners Assn., Inc. v Chin, 12 AD3d 370 [2004].) Since the MTA’s interests are so closely intertwined or sharply adverse to the interests of the various parties in the action, and because it is undeniably clear that the MTA will be directly affected by the ultimate outcome herein, the MTA is hereby deemed a necessary party.
Accordingly, the City’s motion and the MTA’s cross motion for dismissal of the complaint against it in action No. 1 is denied.
Next, the Andre plaintiffs seek to preliminarily enjoin the defendants from effectuating the proposed takeover during the pendency of this action and to restore the claims management work to the bus companies’ claims department.
It is well settled that the decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court. (Schweizer v Town of Smithtown, 19 AD3d 682 [2005]; Ying Fung Moy v Hohi Umeki, 10 AD3d 604 [2004].) The purpose of a preliminary injunction is to maintain the status quo pending determination of the action. (See Rattner & Assoc. v Sears, Roebuck & Co., 294 AD2d 346 [2002].)
To demonstrate an entitlement to a preliminary injunction, a movant must establish (1) the likelihood of success on the merits, (2) irreparable harm absent the granting of the preliminary injunction, and (3) a balancing of the equities in the movant’s favor. (See Hightower v Reid, 5 AD3d 440 [2004]; Evans-Freke v Showcase Contr. Corp., 3 AD3d 549 [2004].)
The 1975 agreement and subsequent certification agreements require that the City and the bus companies apply *372 specific employee protective arrangements for the benefit of the union and nonunion employees of the subject transportation system. The bus companies, as recipients of federal operating assistance funds, are bound by the agreements to be financially responsible for the application of the employee protective arrangements. In turn, the City is contractually obligated to ensure that the bus companies and any subsequent transit operator, including the MTA, agree to be bound by the agreements in order to receive the federal operating assistance necessary to operate the subject transit system, or project, as these transit and corollary operations are referred to in the 1975 agreement. Moreover, to the extent that the term sheet agreement, dated April 19, 2004, evinces an understanding between the City and the MTA that the MTA will not assume employee pension, severance and other obligations which were designed to inure to the benefit of the employees of the project, the contemplated takeover will violate the City’s obligations under paragraph 12 of the 1975 agreement and subsequent certifications. Lastly, the City’s transferring of the bus companies’ claims processing work to AIGCS absent an open, competitive procurement process constitutes a flagrant violation of General Municipal Law § 103.
In view of the foregoing, the court finds that the bus companies have submitted sufficient proof to demonstrate a likelihood of success on the merits of their claims based upon the actions of the City and MTA in contravention of the 1975 agreement as well as General Municipal Law § 103.
The Andre plaintiffs have also established that they will be irreparably harmed in the absence of an injunction preventing the proposed takeover from proceeding in advance of the DOL’s determination and enforcement of the nonunion employees’ substantive rights in that the City’s actions will undoubtedly result in unemployment, loss of pension benefits and taxpayer waste. Finally, the balance of equities tips in favor of the Andre plaintiffs as the loss to these plaintiffs if the proposed takeover proceeds far outweigh any loss that the City may incur if the status quo is maintained. Moreover, in light of the legislative intent with respect to enactment of the so-called 13 (c) provision and its requirement that the 1975 agreement provide the subject protective arrangements, the court would be remiss in its duty to administer justice if it permitted the proposed takeover to proceed in advance of a ruling by the DOL concerning the scope of the rights and *373 obligations which flow from the 1975 agreement and subsequent certifications.
Under the circumstances presented, preliminary injunctive relief enjoining the contemplated takeover pending the determination of this action is warranted. Further, since the previous transfer of claims management work to AIGCS violates local law and the procurement policy, it is also incumbent upon the court to direct that the management of all the claims filed against the bus companies since January 1, 2002 be restored to the companies forthwith.
Action No. 2
The bus companies assert a single cause of action in their complaint against the City and MTA. They seek, inter alia, an injunction enjoining the City of New York and the MTA from consummating the transfer of the subject transit operations until such time as the MTA agrees to be bound by the terms of the 1975 agreement and subsequent certifications and to provide the protective arrangements contained therein. The MTA seeks to dismiss the bus companies’ complaint against them in action No. 2, pursuant to CPLR 3211 (a) (7), on the ground that the complaint fails to state a cause of action because the MTA was not a signatory to the 1975 agreement. The MTA’s motion to dismiss the complaint against it in action No. 2 is denied for the reasons stated with respect to the denial of the MTA’s request to dismiss the amended complaint against it in action No. 1. The MTA is a necessary party to action No. 2 as well. (CPLR 1001, 1003; Matter of Cybul v Village of Scarsdale, 17 AD3d 462 [2005], supra.)
Accordingly, it is ordered that the motion in action No. 1 by plaintiffs Green Bus Lines, Inc., Triboro Coach Corp., Jamaica Buses, Inc. and Command Bus Company, Inc. for a preliminary injunction enjoining defendants City of New York and Metropolitan Transportation Authority from transferring the operations of the bus companies during the pendency of this action is granted; ordered that the motion in action No. 1 by plaintiffs Green Bus Lines, Inc., Triboro Coach Corp., Jamaica Buses, Inc. and Command Bus Company, Inc. to have the management of the claims against them restored to their claims department is granted and the claims files which were previously transferred to AIGCS shall be restored to the bus companies claims department forthwith; ordered that the motion and cross motion in *374 action No. 1 by the City and MTA to dismiss the complaint against them is denied; ordered that the motion in action No. 2 by the MTA to dismiss the complaint against it is denied; and it is further ordered that the remaining branches of the motions and cross motions are denied as academic or without merit.

 The motion and cross motion for attorney disqualification are moot since they were previously determined from the bench.